IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 95-cv-1700-RPM

HAYNES TRANE SERVICE AGENCY, INC. and
FREDERICK M. HAYNES,

      Plaintiffs,

v.

AMERICAN STANDARD, INC. *d/b/a*
THE TRANE COMPANY,

      Defendant.

---

## RULINGS ON LEGAL ISSUES RELEVANT TO FRAUD DAMAGES

---

On December 7, 2005, the jury returned a verdict finding that The Trane Company ("Trane") proved by a preponderance of the evidence that Haynes Trane Service Agency ("HTSA") followed a pattern or practice of fraudulent conduct in submitting claims for payment under the price assistance program. The determination of the amount of damages Trane sustained from that fraudulent conduct is to be determined by the Special Master following instructions to be given pursuant to Fed. R. Civ. P. 53(b)(2). The parties have posed five issues to be resolved before those instructions can be written.

    1.    <u>Is HTSA entitled to an offset of the total amount of credits for claimbacks validly claimed from Trane for equipment HTSA sold in the ordinary course of business</u>?

The answer is yes. Payment for those credits was not made because Trane took the

-1-

position that those amounts would be set off against the money HTSA must pay back for the improper submissions. HTSA claims that the total of such credits is $327,164.93. The jury was not asked to determine the amount because that is a part of the calculation to be made by the Special Master. He will decide the net amount of Trane's damages after giving credit for valid but unpaid claimbacks and whether there should be any interest accrued for the unpaid credits.

  2. <u>What is the beginning date for the accounting for the fraudulent claimbacks?</u>

The beginning date is that used by William C. Carey, January 1992. The statute of limitations for fraud did not begin to run before March, 1995 when Trane first learned of the practice of altering invoices at the direction of Bill Forward. The adjustments made as the result of the Lowell Hinsch audit in May, 1993 do not constitute an accord and satisfaction and do not form a basis for an estoppel or waiver. The fraudulent practices were not known to Trane at the time of the adjustment and Hinsch did not discover them in his audit.

  3. <u>What methodology should be used for recouping sell-ups?</u>

The fraudulent sell-up practice was described as follows by counsel for HTSA in submitting an insurance claim:

> Haynes' UPG group would tell Trane that Haynes needed to reduce the price of the UPG product below the target price in order to make a sale and would seek pricing assistance. Trane would agree to provide the pricing assistance, and Haynes' UPG group would submit the claim back paperwork. Haynes' UPG group would then "sell up," meaning that it would sell the UPG product for more than it had told Trane that it was able to obtain. However, the Haynes UPG group would not tell Trane about the sell-up and so would still obtain the claim back credit. By way of example, Trane would sell a unit to Haynes for $100 on the assumption that Haynes could resell it for $120. Haynes' UPG group would then tell Trane that they could only resell the unit for $100. Based on this, Trane would agree to reduce its sales price to Haynes to $80. Haynes' UPG group would then sell the product for $120. It would not, however, tell Trane, and Trane would still give Haynes a credit for the $20 pricing assistance.

Trial Ex. J-13(4), Feb. 5, 1996, Proof of Loss Statement to Fireman's Fund Ins. Co.

When HTSA was audited by Mr. Briggs in 1995, Trane made adjustments for sell-ups by taking a percentage of the amount of the sell-up, capped at the amount of the claimback. This fact does not signify that in the calculation of fraud damages HTSA should be entitled to retain a portion of the sell-up. Trane's practice of splitting sell-ups was an effort to address the fact that good faith mistakes can occur in the ordinary course of business. HTSA, however, intentionally concealed facts regarding its sell-up transactions. Trane is entitled to recover the full amount of the claimback money that HTSA received on account of the secret sell-ups.

    4.    <u>Is HTSA entitled to an equitable set-off for MAF/DAF funds</u>?

The answer is no. Sales at reduced prices, for which a distributor received a claimback, did not qualify for inclusion in the funding of MAF/DAF accounts. A distributor's entitlement to MAF/DAF funds arose only after the distributor incurred a marketing cost and submitted those costs to Trane. HTSA submitted no proof of marketing costs that would be entitled to reimbursement.

    5.    <u>Whether claimbacks received by HTSA on account of intra-company sales, returned products, and transactions for which documentation is lacking should be included in the damages calculations</u>?

*Intra-company sales*

Trane is entitled to recover for claimbacks on intra-company sales. The submission of claimbacks on intracompany sales was fraudulent because there was no competition to be met.

*Returned products*

Trane is entitled to recover claimbacks for returned products.  HTSA's failure to tell Trane about the return, and its retention of claimback monies on returned products constituted fraud.

*Missing Documents*

At trial Trane contended that the pattern or practice of fraudulent conduct included HTSA's failure to maintain and/or provide Trane with documentation supporting HTSA's claimbacks.  HTSA disputed that its inability to locate missing documents could support a finding that the claimback was fraudulent when submitted.  This argument was rejected by the jury.  The lack of documentation was part of the pattern or practice of fraudulent conduct.  Trane is entitled to recover damages for those transactions for which documentation is lacking to support HTSA's retention of the claimback funds.

HTSA's proposed methodology

HTSA proposes that the starting point for the damages determination be the spreadsheet prepared by HTSA's chief financial officer, Mr. Moss.  HTSA's proposal is rejected.  Mr. Moss's spreadsheet did not employ the correct beginning date and the accuracy of his analysis has not been determined.

Based on the foregoing, it is

ORDERED that HTSA and Trane shall submit their respective drafts of a form of order to be entered under Fed. R. Civ. P. 53(b)(2) on or before August 15, 2006.

Dated: July 27, 2006

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge