IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 95-cv-01700-RPM

HAYNES TRANE SERVICE AGENCY, INC., and
FREDERICK M. HAYNES,

        Plaintiffs,

v.

AMERICAN STANDARD, INC., d/b/a THE TRANE COMPANY,

        Defendant.

_____

ORDER APPOINTING SPECIAL MASTER TO DETERMINE COUNTERCLAIM DAMAGES
_____

Pursuant to the Order Directing Further Proceedings, entered on May 12, 2006, the Joint Statement Concerning Instructions to Special Master, filed September 8, 2006, and this Court's Ruling on Dispute Regarding Computation of Offset to Fraud Damages, filed on October 2, 2006, it is

ORDERED, that pursuant to Fed.R.Civ.P. 53, Sheldon E. Friedman is appointed Special Master to proceed with all reasonable diligence to perform the following duties:

### I.    Procedures For Determining Damages On Trane's Fraud Counterclaim

Trane's expert witness, William C. Carey, has prepared a calculation of the damages claimed by Trane using a statistical sample. Carey and his team reviewed 336 claimbacks (consisting of 1,351 line items) of the total of 2,960 HTSA claimbacks between January 1992 and April 1995. Carey and his team prepared a spreadsheet entitled Claimback Sample Data and

Analysis collecting data concerning each of the 1,351 claimback line items and providing their analysis regarding whether each line item was "unsupported." Carey determined an item to be unsupported if it fell into any one (or more than one) of the four categories of conduct determined to be fraudulent. Using statistical extrapolation, Carey then estimated the total "unsupported" claimbacks. *See* Expert Report of William C. Carey attached as Exhibit A to Defendant's Supplemental or Additional Disclosures pursuant to Fed.R.Civ.P 26(a)(2) dated October 20, 2004.

The statistical analysis performed by William C. Carey shall be used as the starting point to quantify the damages on Trane's fraud counterclaim against HTSA.

**B.      Procedure for Determining the Damages Within Carey's Statistical Sample**

The parties have agreed to the following procedures to quantify the amount of Trane's fraud counterclaim damages within the statistical sample employed by Carey. Those procedures are as follows:

(1) Within thirty days after the date of this order, HTSA will identify in detail to Trane which of the line entries on Carey's Claimback Sample Data and Analysis spreadsheet it feels are erroneous (either as to the data or the analysis) and the reason(s) why.

(2) Trane will then respond to HTSA, within thirty days, either agreeing with HTSA's criticism(s) or explaining in detail why it believes Carey's analysis is correct.

(3) If the parties continue to disagree, they will, within thirty days of Trane's response to HTSA, submit all appropriate documents and any written argument regarding their dispute(s) to the Special Master who will then decide which position is correct (only as to those items in dispute). The Special Master may conduct a hearing to take testimony and/or hear oral argument

if he feels it would be useful to his determination or is otherwise appropriate.

(4) Within thirty days from the date the parties submit their disputes to the Special Master, he will provide a report to the parties making findings regarding the disputed items. The parties will then revise Carey's spreadsheet, which is in Excel, to incorporate the Special Master's findings.

If disputes must be presented to the Special Master, he will need some basic understanding of the relationship between HTSA and Trane under the independent Wholesale Distributor Agreement[s] and of the claimback process. To educate the Special Master, both Trane and HTSA may submit brief summaries of the relationship and the claimback program to the Special Master if and when they submit any disputes regarding the individual line items. The parties and counsel will also make themselves available to respond to any inquiries from the Special Master.

### C.     Procedures Regarding the Use of Statistical Extrapolation to Determine the Fraud Damages in the Total Population

The parties have agreed to the following procedures for using the statistical sample to estimate the value of the total population of fraud counterclaim damages for the period from the January 1992 through April 1995 period. Those procedures are as follows:

(1) Within fifteen days of the date that the Special Master rules on the disputed items following the process identified in Section I.B., above, *i.e.*, the inputs to the statistical extrapolation are determined, Carey will re-do his estimate of the value of the "unsupported" claimbacks in the entire population using the re-calculated results, if any, from the sampled population as determined by the Special Master. Carey's work will be distributed to HTSA with all supporting and backup workpapers, all in useable electronic format.

(2) Within thirty days after HTSA receives Carey's new work product in electronic format, HTSA must identify, in detail, to Trane any objections to or criticisms it has with Carey's re-done work product including the statistical methodology used by Carey to estimate the damages in the total population or the calculation of the redone statistical extrapolation.

(3) Trane must then respond, within fifteen days, either agreeing with HTSA's criticism(s) or explaining in detail why it believes Carey's analysis is correct.

(4) If the parties continue to disagree, they will submit, within fifteen days of Trane's response to HTSA, all appropriate documents and arguments regarding their dispute(s) to the Special Master who will then decide which position is correct. Again, the Special Master may take testimony and/or conduct a hearing with oral argument if he feels it would be useful to his determination or is otherwise appropriate.

(5) Within 30 days from the date the parties submit their disputes to the Special Master, he will provide a report making findings regarding the disputed items and a quantification of the damages on Trane's fraud counterclaims.

## II.     Determination Of Offset Amount Owing To HTSA

The credit memos contained in Plaintiff's Trial Exhibit 571 issued after June 7, 1995, shall be accepted as proof of an offset to HTSA on Trane's fraud damages.

(1) To the extent that HTSA claims an offset for credit memos issued before June 7, 1995, HTSA must within 60 days of this order provide Trane with its analysis of each of the transactions it contends support its offset claim, including all relevant documentation.

(2) Within 45 days of receiving HTSA's analysis and documentation, Trane shall provide HTSA with its response to HTSA's analysis. Trane's response shall identify those transactions

Trane asserts are not valid and the reasons for Trane's position including, when applicable, whether a transaction falls within one or more of the four categories of fraud. Trane will also provide support for the debits, including those in the amount of $63,265.30 (dated 05/24/93) and $92,905.55 (dated 02/22/94), that are reflected on the July 31, 1995 Receivables Statement, Plaintiff Trial Ex. 239, and not accounted for in Moss's current analysis.

(3) HTSA must then respond to Trane, within 30 days, either agreeing with Trane's criticism(s) or explaining why it believes Moss's analysis is correct.

(4) If the parties continue to disagree, they will submit, within 30 days of HTSA's response to Trane, all appropriate documents and any argument that they feel appropriate to the Special Master who will then decide which position is correct. Again, the Special Master may take testimony and/or conduct a hearing with oral argument if he feels it would be useful to his determination or is otherwise appropriate.

(5) Within 30 days from the date the parties submit their disputes to the Special Master, he will provide a report to the parties making findings regarding the disputed items. The Special Master will then revise the Moss analysis to reflect the Special Master's findings thereby establishing the amount of any offset due to HTSA for credit memos issued before June 7, 1995.

### III.     Additional Items

The Special Master has authority to regulate all proceedings conducted by him and to take all appropriate measures to perform fairly and efficiently the assigned duties. Fed.R.Civ.P. 53(c). The Special Master may exercise the power of this Court to compel, take, and record evidence, and all proceedings before the Special Master will be recorded.  Fed.R.Civ.P. 53(d). The Court

will set aside the Special Master's ruling on a procedural matter only for an abuse of discretion. Fed.R.Civ.P. 53(g)(5).

The Special Master shall preserve all materials submitted to him by the parties and all of his work product and shall file all of these materials as the record of the Special Master's activities. Fed.R.Civ.P. 53(b)(2)(C).

In acting on the Special Master's order, report, or recommendations, the Court will first afford the parties an opportunity to be heard and may receive evidence. Fed.R.Civ.P. 53(g)(1).

The Court must decide de novo all objections to findings of fact and conclusions of law made or recommended by the Special Master. Fed.R.Civ.P 53(b)(2)(g)(3) and (4). Any party may file objections to – or a motion to adopt or modify – the Special Master's order, report, or recommendations no later than twenty days from the time the Special Master's order, report, or recommendations is served. Fed.R.Civ.P. 53(g)(2).

The costs of the Special Master shall initially be divided equally between Trane and HTSA.  The Special Master shall, monthly, submit bills for his reasonable out-of-pocket costs and time, determined by multiplying his standard hourly rate times the amount of time actually spent by the Special Master as measured in increments of one-tenth of one hour, to counsel for Trane and HTSA with a courtesy copy filed with the Court.

DATED: October 2nd, 2006

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge

7