IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 95-cv-01700-RPM

HAYNES TRANE SERVICE AGENCY, INC., and
FREDERICK M. HAYNES,

        Plaintiffs,

v.

AMERICAN STANDARD, INC., d/b/a THE TRANE COMPANY,

        Defendant.

_____

FINDINGS, CONCLUSIONS AND ORDER DENYING EQUITABLE RELIEF
_____

Upon consideration of the evidence received at the jury trial of the issues between Haynes Trane Service Agency ""HTSA") and Frederick M. Haynes ("Fred Haynes"), plaintiffs and the defendant American Standard, Inc., d/b/a The Trane Company ("Trane") and the parties' briefs regarding the applicability of the doctrine of equitable estoppel to Fred Haynes' claim for damages from Trane 's termination of the Franchise Agreement, the Court makes the following findings of fact and conclusions of law.

Having concluded that under Wisconsin case law, Trane could be estopped from denying that its sales franchise contract with Fred Haynes had been modified to require good cause for termination, the Tenth Circuit Court of Appeals directed that at a new trial the jury should "make factual determinations" which would control the application of an equitable estoppel remedy. Accordingly, the jury was instructed on the factual

elements of equitable estoppel and returned a verdict as follows:

Did Frederick Haynes prove by clear, satisfactory and convincing evidence that:

1. The Trane Company by its conduct assured Frederick Haynes that the Franchise Agreement would be terminated only for good cause?

    <u>    Yes         </u>
    (Yes or No)

2. Did The Trane Company's conduct induce reliance by Frederick Haynes on that assurance?

    <u>    Yes         </u>
    (Yes or No)

3. Was Frederick Haynes' reliance reasonable?

    <u>    Yes         </u>
    (Yes or No)

4. Did Frederick Haynes suffer a detriment as a result of his reliance on The Trane Company's conduct?

    <u>    Yes         </u>
    (Yes or No)

The jury also found that Fred Haynes proved by a preponderance of the evidence that Trane terminated the Franchise Agreement without good cause and that Fred Haynes sustained an economic loss of $4,780,000.

The defendant contends that despite these jury findings, this Court must consider whether the evidence at trial concerning the conduct of Fred Haynes in his dealings with Trane justify the application of an equitable remedy under the traditional maxims of equity. The Wisconsin Court of Appeals made it clear in *Nugent v. Slaght*,

638 N.W. 2d 594 (WI App. 2001), that even though all of the elements of equitable estoppel have been established, actual application of the doctrine is within the discretion of the trial court.  That case followed *Williams v. Kaerek Builders, Inc.,* 568 N.W. 2d 313 (WI App. 1997), affirming the trial court's decision not to apply its equitable powers to estop a building contractor from relying on the statute of limitations as a defense to a claim of breach of the building contract.

The Franchise Agreement was signed in 1968.  Although Fred Haynes, individually, was the holder of the franchise, he formed HTSA to perform the agreement.  In 1990, HTSA, through Fred Haynes, entered into a Distributor Agreement for one year, with successive agreements made annually thereafter.  HTSA is a Sub-chapter S corporation and its revenues went to the benefit of Fred Haynes.

The contracts have been considered separately for analysis of the legal claims throughout this litigation.  That strict separation does not control the question that must now be decided.  Does Fred Haynes deserve equitable relief of an award of damages for the losses the jury found to have resulted from his inability to sell Trane's commercial products after July 8, 1995, even though Trane terminated his rights to do so in accordance with the terms of the Franchise Agreement?   A negative answer is required because Fred Haynes did not fairly deal with Trane by permitting his employees to engage in a persistent pattern and practice of fraud in obtaining payments under the claimback program for distributors of Trane's unitary products and in his adamant and persistent refusal to assist in the investigation of those fraudulent practices and his denial of responsibility for it, even in his testimony in two jury trials.

The jury found for Trane on its counterclaim for fraud against HTSA in the claimback program. The jurors were not asked to evaluate the role of Fred Haynes in that fraud. There is nothing in the jury verdict that warrants an inference that the jury found Fred Haynes' repeated denials of knowledge of the fraud to be credible. The finding that Trane did not have good cause to terminate the Franchise Agreement is not determinative given this Court's broad definition of good cause in the instructions. Accordingly, this Court is free to make its own findings.

Fred Haynes was very successful in the sale of Trane's commercial products over many years, producing substantial revenues for himself and Trane. The distribution of Trane's unitary products, beginning in 1990, was not very profitable. Fred Haynes hired William Forward to manage the distributorship and gave him full authority over that part of the business. Fred Haynes did not actively supervise Forward but did emphasize the need to increase revenues. Forward did so by fraudulently claiming payments through a pattern of false reporting of pricing information and concealment through false documentation, all as succinctly summarized in a May 2, 1995, letter from Steven Moss, Chief Financial Officer, as a notice of an insurance claim (Defendant's Exhibit H-9) and a Proof of Loss to the fidelity insurance carrier, dated February 5, 1996, submitted by Haynes' counsel. (Defendant's Exhibit J-132).

Fred Haynes was warned about Forward's practices and his instructions to the employees when employee Vicki Graves told him that invoices were being retyped in preparation for an audit by a Trane representative in March, 1995. In a conversation

on the Friday before the Monday audit CFO Moss also told Fred Haynes about discrepancies between invoices and claimback forms and that Moss had personally seen that invoices had different pricing information from what was submitted to Trane.

When Trane's auditor, Mike Briggs, arrived on Monday, as scheduled, neither Moss nor Fred Haynes told him what they had learned.  Briggs was directed to Forward as the HTSA representative to assist in the audit.  Fred Haynes made no effort to confront Forward to inquire about his practices before the audit.  Rather, he scheduled a meeting for Wednesday after the auditor left, the audit being incomplete.  At that meeting, Fred Haynes did not question Forward about the suspected fraudulent practices.

On March 21, 1995, Fred Haynes and Moss met with Fred Kautz and Frank Kruger, Trane vice-presidents, and Brian Thelen, the head auditor for American Standard, to discuss claimbacks as a result of a telephone call to Trane from a former HTSA employee.  Both Moss and Fred Haynes failed to respond to the expressed concerns of the Trane representatives except Fred Haynes' expression of indignant outrage at the suggestion that he was keeping two sets of books.

After a second attempt at an on-site audit in April, 1995, by Thelen and Briggs and after being confronted with examples of their findings, both Moss and Fred Haynes were silent and unwilling to do anything to further the investigation.

The testimony of Fred Haynes at both trials was consistent in denials of any responsibility for wrongdoing.  He even professed to not understand the claimback program.  Considered in the light most favorable to Fred Haynes' character, his

5

testimony shows that he deliberately closed his eyes and ears to what should have been obvious to him in attempting to avoid any responsibility for the fraudulent conduct of his business by his employees and his attempt to retain for his personal benefit the proceeds of that fraud.  Such conduct must not be rewarded by this Court.  Accordingly, it is

ORDERED, that Frederick Haynes take nothing from the jury verdict on his claim of equitable estoppel and that judgment will enter for the defendant, The Trane Company, on that claim.

DATED: October 25th, 2006

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge